Two cases to be submitted today on oral argument, again with A & A Concepts v. Fernandez. Mr. Klonowski. Morning, Your Honors Attorney Jason Klonowski on behalf of Avocado Love Marketing and also speaking today on behalf of A & A Concepts and Wilson Davis Company, Consolidated Appellants in this matter. May it please the Court. Your Honors, the issue before the court in this case is one of the appropriateness of a legal test when the question arising under the Perishable Agriculture Commodities Act involves the test for individual liability. The appeal taken here is, draws a question between whether a right line or mechanical test is the appropriate test to be used or as the appellants proffer in the appellant brief, whether or not a control test or a fact-intensive inquiry is the better reasoned approach in this case. The district court erred in that it elected to follow and apply a bright line or mechanical test when the court stated that in order for individual to be liable under PACA, they must be a shareholder, officer, or director of the corporate trustee. The position we are taking obviously is that mandatory language, that must, is indicative of the incorrect test. We've cited numerous cases out of the Third Circuit with Bear Mountain Orchards and a lot of cases out of the Fifth Circuit demonstrating that a control test or a more fact-intensive analysis that allows the court to look at how the company is structured, how it's actually operating and how it's actually managed, puts the trier of fact in the best position to determine who had control over the trust assets, who was involved in the activities that actually led to the violation of the trust. We believe that what's instructive in this case, Your Honor, is how the USDA interprets its own statute and regulations. And in this context, we're looking at section 499A9, which is the definition from the statute that talks about individuals, responsibly connected, or individuals who would be potentially liable for the violations of the corporate trustee, which would be the PACA license entity. In that context, Your Honor, which we believe is appropriate, it's clear that the USDA looks at the issue as a rebuttable presumption. The presumption is that if you are, and the evidence shows that you are an officer, a director, a shareholder, that you are presumed to be liable or potentially liable for the shortcomings or the failings of the company. In this case, Your Honors, we're looking at the failure to pay the produce suppliers, which is one of the core tenements of the PACA statute, to protect as a paid suppliers of perishable agriculture commodities. In the concept of a rebuttable presumption, Your Honors, our position is this is an argument that the door swings both ways. If an individual who is potentially to be held liable is found by virtue of just corporate designation, you are an officer, therefore you are liable, and that person has the ability under the USDA rules and indeed under several of the circuit rulings to rebut that presumption through evidence, then that door should swing the other way, Your Honors, and we're asking that if the presumption is if you are not an officer, director, or shareholder, the unpaid creditors should have the ability to rebut the presumption of non-liability by presenting evidence that but for the absence of a corporate designation, the person in control of the trust assets are the person who's running the corporation. Your Honor, we believe that would align the Fifth Circuit's position in this case with both how the USDA interprets its own statute. It would call for the rejection of a bright line test and allow for a control test to be put in place. Well, so describe for us if we were to do a published opinion and write the test, tell us in one sentence or not more than two sentences what we should say to announce the test in this circuit. Your Honor, if we were to publish an opinion or write a test, I would phrase it in the context of a rebuttable presumption, and I would say that if an individual is not an officer, director, the burden would shift or remain upon the creditor to demonstrate that notwithstanding the absence of a corporate designation, that person was actually in a position to control the trust assets of the violative corporate trustee. I'm sure Your Honor is going to do it much more eloquently than I can, but that would be one or two sentences of showing the presumptive, the rebuttable presumption, I think would be clear, Your Honor, and making it clear that the case is not can you, yes or no, prove a corporate designation, and if you can't, end of inquiry. That's the harm of that bright line test, and that's what we're seeking to avoid through the rebuttable presumption. Again, if it swings one way, which it absolutely does in the USDA, to allow it to swing the other way. I think in your briefing, you said that you don't challenge the district court's factual findings in this case. We do not, Your Honor. We're here truly to say that Judge Garcia chose the wrong test. Under the rebuttable presumption, further to Judge Smith's questions, under the scenario that you just painted, what would be the reason for us to remand? Hasn't the court already made findings to that effect, in its findings effect? Your Honor, the court heard substantial evidence about who was in a position to control all the various activities, the motives, but upon remand, what we would want is not necessarily a new trial. I don't think it's warranted, because the record is clear. We would want the court to go back and actually consider those factors, as opposed to, it's clear from the order, at least to us, Your Honor, that once the court was convinced that the corporate designation was not proven, that it was the end of the inquiry, and not withstanding the fact that the record is filled with the evidence of who was actually in control and why, we would ask that it be remanded so that the court can further evaluate the evidence that was submitted. We believe the judge stopped short. We believe he had the evidence before him, but believe through the application of bright-line test that his job was done as soon as he . . . In paragraph 16 through 19 of his findings effect, he found that the defendant never told several of the suppliers that he owned or was a member of or otherwise had an official control over LPE. He also found that the defendant did not have authority to direct payments of Lone Star Produce Express LLC's operating funds. He also found that the defendant did not have authority to . . . as a signatory to LPE LLC's bank account, and that he didn't sign any checks on LPE's account. What else would there be for him to find? Your Honor, the case was unique in that the . . . several other factors, and we identified it in the briefing. However, to answer Your Honor's question directly, there was a non-compete provision in a contract. Originally, when the defendant left an older company called Fernandez Produce that was his brother, they parted ways. There was a lot of conflict in the family. There was a non-compete provision, and that if he went back in and opened up a competing produce business like Lone Star Express, that he would be sued and he would have all kinds of legal problems. So, he stepped back, took his two sons. One was a former military and one was a dock worker or truck driver. Not executive levels in the produce industry. Put them into this position so that he could remain . . . drive the bus from the back seats, so to speak, Your Honor. Put a straw man operation in place, and be able to continue to make money and earn income through his connections in the produce industry. In doing so, while intentionally making sure his name was not on the bank account, and his name was not on any type of Secretary of State filing that would designate him as an officer and director, and that type of intentional avoidance of litigation through a non-compete agreement set him up to, when the company started to fail or refuse to pay . . . So, you're not arguing that the non-compete agreement standing alone gives the type of control that is required under PACA? Absolutely not, Your Honor. Those are just one of the many factors, and that would be an example of motive to set up a straw man corporation that would in the face of a bright line test allow liability to be skirted, and we think to . . . would actually sidestep some of the sanction provisions that the USDA imposes on those responsibly connected to these same types of companies. So, we're trying to align it all, but I also believe that what this couple findings that the judge did make was dicta or window dressings at best compared to the voluminous record in the case on all the different facts as to why. Like, we had three different witnesses appear, Your Honor. All the witnesses testified that they never spoke to any of the two alleged owners of the company. They only spoke to Mr. Fernandez. When they needed to get paid, they went to him, not to these straw individuals who were the relatives. The records are pleat with additional facts that if a fact of intensive inquiry were, in fact, employed, just finding that there's no signatory name on a big signature card. Your Honor, of course, there's not a signature card that would have his name on it. That would be discoverable by the brother, and that would bring him into litigation for violating the non-compete. So, this is a situation where an intentional straw man type operation was set up, and all of that was developed. Evidence was presented at the trial court, Your Honor. So, the one or two things that Judge Garcia put in there is maybe 5% is super light as opposed to what, if a court was actually charged with applying a fact intensive or a control test, that they would actually consider. Whether they agree with our position or not is not the point, obviously, Your Honor. But all the different facts in the record were there. We believe it's clear that when the language of the order says that you must be an officer, coupled with the fact that there's only one or two facts that the court found, whether they're right or wrong, we're only contesting, to come back to the original question, that he chose and applied the wrong test, and the inquiry was largely and incorrectly concluded once the trial judge decided that there was no evidence in the record, which was correct, that Mr. Fernandez was not an officer, director, or controller, and that was by design. And the application of a control test would allow that individual and that evidence surrounding their involvement, win, lose, or draw, to be further developed. And we think that's the better reasoned approach. We believe that that furthers the congressional intent of PACA. It aligns with several of the sister circuits in the country, and it helps ensure that the unpaid supplier of produce, under the remedial statute that we have, has the ability to recover its losses so that those losses are not reverbicated through the food supply and end up raising prices at the grocery store. Which of the other circuits is your favorite on this? Your Honor, we . . . personally, I like the Bear Mountain case out of the Third Circuit. I was also trial counsel in that case, Your Honor. And the reason I like that is because the court rejected a bright line test, Your Honor. The court also went through and said, in that case, it's the inverse situation. The court did find that an officer was there, and instead of applying a bright line test that says, because I found you're an officer, I'm going to automatically find you liable, they allowed the officer, consistent with the USDA interpretation and regulation, to rebut that presumption of liability. And the court ultimately held that Ms. Jacqueline Fleisher, the presumptive, rebuttable presumption that swings both ways, Your Honor, that's what we're asking the court to do, is say in the inverse, if the evidence is clear that the person is not an officer, that we'd be allowed to rebut that presumption of non-liability with the type of evidence that we just spoke about regarding Mr. Fernandez's involvement in the company. Let me ask you this. Am I correct that you do not quarrel with the district court's finding that Fernandez Jr. was not a member of Lone Star and was not a signatory on his bank accounts? No, Your Honor, we do not challenge that. Well, then what is the evidence of his control over the trust assets? The evidence of Mr. Fernandez's control as presented to the trial court, Your Honor, is the three different witnesses, all owners of the various appellants in this case, testify that they personally spoke to Mr. Fernandez and not the two individuals who were the actual owners, officers of the company. Everything from placing orders for perishable commodities, talking with Mr. Fernandez about collections when bills weren't paid, going to the place of business, meeting with Mr. Fernandez, taking a tour of the facility. One witness testified that when he needed to get paid, Mr. Fernandez took him upstairs into the administrative office, told the lady behind the desk, I need X dollars of cash. They went and got the cash and he made sure that the individual got paid. So there's records replete with types of information to show that he was in control of the trust assets, the produce itself, the money, and had the ability to direct . . . What level of control did he have to have? Your Honor, if he was . . . our position is he would . . . are you asking what did he have at trial or what would he need to have under a test? What is that? As a non-member or officer, he could be secondarily liable if he had control. What level of control? Sure. An individual who would be in secondarily liable or potentially liable would need to be in a position to control the trust assets. So it's not so much a level of control of the company, but it's a level of control over the trust assets. So for example, does he have the ability to direct the company or its individuals with respect to the purchase and sale of produce, because produce is one of the things recognized by the statute as a trust asset itself, the receivables or the proceeds. What, if any, control does the individual have, who is in this case not an officer or director, to influence checks, to direct people to write checks, to give people cash? What control does he have over those trust assets? Because that would be the administration in order to control over the distribution of trust assets, to direct an administrative or a W-2 employee to hand somebody cash to pay a bill, to pay that supplier would be an example. So that type of control would be important. That way the net is brought in . . . What is the evidence of that control, level of control? I'm sorry, Your Honor? What is the evidence before the court of that level of control? So the evidence before the trial court of that level of control came from, again, the witness testimony from three different owners of the company, their direct involvement with Mr. Fernandez, the fact that Mr. Fernandez contacted them to place orders for produce, the fact that Mr. Fernandez worked with them to negotiate settlements of unpaid bills, the fact that Mr. Fernandez actually caused the employees of the company at the location of the company to pay suppliers, so he's directing funds. The evidence was also that a couple, I believe the gentleman from A&A Concepts, went to visit Mr. Fernandez at his home to visit with him and his son to talk about the unpaid bills, to work out a plan. So in that case, the evidence was clear that he also had the ability to negotiate contracts and to bind the company through his oral agreements, even though he was not an officer, not the director, and were not challenging that finding. So that's some of the evidence as to what level of control Mr. Fernandez has that we believe was improperly excluded from consideration because the wrong test was employed and a bright line test was applied. All right. You've saved time for rebuttal, Mr. Kornowski. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court? I would just like to start off with addressing a few of the points Appellant's Counsel made in response to Your Honor's questions, particularly with respect to what evidence was before the trial court at the time that allegedly showed that Mr. Fernandez, Jr. had control over the Lone Star Produce assets. There was actually a lot of evidence presented at trial directly to the contrary of what Appellant's Counsel said. In fact, Mr. Fernandez, Jr. only placed a couple of—there's testimony that he only placed a couple of records of orders for produce at the very beginning of Lone Star Produce's time in business. One of the appellant's corporate officers testified that he dealt directly with the two sons. These were Mr. Fernandez, Jr.'s sons that ran the company. He testified that he dealt 90% with Mr. Fernandez, Jr.'s son, Leonidas III, and the other 10% with Eric Fernandez. He testified that when—that Chris Peters at Wilson Davis Company visited only three or four times Mr. Fernandez, Jr. was there at the market, showed him around, but other than that, he was never the point of contact for payment. Eric or Leo III were the ones who called him to come get payment. Mr. Peters at Wilson Davis Company did provide testimony that one time he was called to the market to receive payment by one of the sons. When he arrived there, Mr. Fernandez, Jr. was there. He said, oh, let me take you to the office. There was already a stack of cash that had been set aside, and all he did was hand that money that had already been set aside by one of the sons to Mr. Peters. Additionally, there was no evidence in the record that Mr. Fernandez, Jr. received any money from Lone Star Produce. According to appellant's counsel, the non-compete provision prohibited Mr. Fernandez, Jr. from operating a company, caused his sons apparently to open Lone Star Produce so he could drive the bus from the backseat, continue to make money and earn income from Lone Star Produce and the produce industry. There's absolutely no evidence in the record that any income was earned by Mr. Fernandez, Jr. from Lone Star Produce. The sole issue before the court this morning is whether the district court properly applied the incorrect legal test when finding that Mr. Fernandez, Jr. was not liable for Lone Star Produce's Packet Trust assets and the judgment against Lone Star Produce and the two sons. The answer is no, the district court did not err. The district court properly applied the correct test that has been in effect in the circuit since 2000 with Goldman Hayden and the test is that an individual officer, director or shareholder that is in control of the trust or in a position to control the trust assets and that has breached his fiduciary duty to maintain the trust assets for the benefit of suppliers and the produce industry may be held liable. That is exactly what the district court did. The district court looks not only contrary to appellant's counsel, the analysis did not stop with, well, Mr. Fernandez, Jr. was not an officer director, full stop, that's it. As Your Honors have already pointed out, there were numerous factual findings in the district court's findings of fact . . . I'm sorry, can you repeat the question? The friend on the other side said that anything after the application of the incorrect test is considered dicta. I think that's what I heard them argue earlier. What's your response to that? So, because . . . we would disagree because the test, regardless of whether, you know, if this court decides to change to the proposed control test, there is still no evidence of actual control here. In paragraphs 16, 17, 18, and 19, the district court conclusively found that there was no actual control exercised by Mr. Fernandez, Jr. over the Lone Star Produce assets. And as appellant's counsel pointed out, he would have this court look at the Third Circuit's decision in Bear Mountain Orchards. Importantly, in that case, the court of the decision that Mrs. Fleischer should not be held liable individually for breach of the Packett Trust. And, in fact, a careful reading of that decision shows that Mrs. Fleischer had actually much more involvement in that company than Mr. Fernandez, Jr. did. She was an employee. She signed checks. She entered into a loan agreement binding the company. There is no evidence here in this record before the court of any similar involvement. And, in fact, you know, appellant's counsel has cited very many, you know, circuit court decisions and district court decisions analyzing liability under PACA, individual liability under PACA. Not a single one of them has found individual liability against somebody who was not involved at all. Even the Third Circuit in Bear Mountain Orchards required consideration of whether the individual sought to be held liable held some position at the company that would show legal authority to bind the company or have control over the trust process. There aren't any decisions out there that tie the analysis to a title or a position, right? There are, Your Honor. There are Sunkist. Those are in the minority. Is that correct or am I wrong about that? They're not in the minority. In fact, almost every single one that I can think of has found PACA liability in the situation of an officer or director or a shareholder, regardless of whether it was in the actual test itself. Some of the phrasings of the test kind of mirror the Bear Mountain Orchards test where the individual has to have had, be in the position to control, but in every single one except for one that I can think of, it was held against officer, director, shareholder. Only one case found that an employee was liable but only for a part of the PACA trust where evidence existed that conclusively showed that $40,000 of the $40,000 was the Eskatzman case from the Second Circuit Court of Appeals. But that case is easily distinguishable from here, from this case, because the $40,000 was transferred to that employee's account. He had also signed numerous checks, received a salary from the company. But in this case, Your Honor, Mr. Fernandez, Jr., again, had no actual involvement. He didn't sign a single check on behalf of Lone Star Produce. He didn't have the authority to. He didn't direct and he didn't have the authority to direct the PACA trust assets of Lone Star Produce. And legal authority is something that this court has placed importance on. For example, in the Ruby Robinson decision, there was a stock purchase agreement that specifically granted one of the shareholders express control to make payments and disbursements of the PACA trust assets. This court found that instructive to show that there was legal authority here, that even though these shareholders may not have made these decisions, they were in the position to have made the decisions and, therefore, breached their duty by failing to comply. Now, we would assert that whether or not this court changes the legal test to remove the shareholder director requirement, that would not change the result here. If this court were inclined to change the test, this was not the case to do it. There was numerous factual findings that the defendant, Mr. Fernandez, Jr., had no actual control. So even if the Bear Mountain Orchards test was applied, where there is no specific requirement for a finding of officer, director, shareholder, managing member status, there is still no evidence of actual control over the PACA trust assets. The trust assets are the agricultural commodities themselves and the money in the bank account. There was no evidence presented to the trial court and no findings of fact related to that evidence that Mr. Fernandez, Jr. had any actual control. And the proposed control test factors that appellants have listed in their brief on page 21, in fact, expand both tests and would have district courts and trial courts across the circuit look into factors that have no bearing on actual control over the PACA trust. These factors include perceived control status. Interestingly enough, the Third Circuit was not persuaded by a similar argument where Mrs. Fleischer had presented herself as an officer, director, or a person in control. Instead, the court looked at the facts that were presented of her actual control. Mr. Klonowski, I think, carefully expresses the test and he did it twice. He says the question was whether the person was actually in a position to control. That's a slight variation on actually being in control or exercising control. It doesn't tell where needed. That's a slightly different test from what you're calling actual control. Your Honor, I don't believe that that's entirely different from what the test is in this circuit. The test, as upheld as recently as 2020 in Escobar-Avocados, is that the individual shareholder officer or director of the corporation who is in control of or in a position to control the trust assets and who breached his fiduciary duty to preserve those assets may be held liable. Here, the district court examined numerous factors, including the other ones that are listed by appellant's counsel, including the fact that he contacted the funds, placed a couple of orders in the beginning, but at the end of the day, the district court found that he was not in control or in a position to control because he had no legal authority to control the trust assets. Should we rely on the Sixth Circuit's Beal case test? We believe that the Beal case is instructive, which . . . the 6Ls versus Beal, which found that an individual who was not an officer shareholder or director could not be held liable. That is the only case that has made that specific ruling, but that precedent is out there in the Sixth Circuit. Yes, Your Honor. And again, I would just like to reiterate that there is no case in this circuit or elsewhere that we have studied or found that has found PACA liability against someone who has absolutely no position at the company. Not an employee, not an officer, not a director, not an AR, accounts receivable clerk, not a night manager. He was just their father. He was there. The fact that he had a 25-year career in the produce industry is irrelevant to whether he had actual control over this specific company and this specific company's trust assets. He had his own company with his brother called Fernandez Produce Express, and that company still exists. He sold his interest in that company to his brother. His brother now runs it. And just because he had a non-compete with his brother, that does not show one way or another whether he had actual control over the Lone Star Produce PACA trust assets. That just shows he had a non-compete. There is no actual evidence in the record that he had control over the PACA trust assets. He could not direct the money. The three witnesses that appellants presented, aside from Mr. Fernandez Jr., testified that they dealt with the sons. And I would also like to touch on the fact that when the company stopped paying bills, Mr. Peters of Wilson Davis went to visit Mr. Fernandez Jr. at his home. He, in fact, jumped two fences to get inside his ranch, and there was testimony about that. Presented by Mr. Fernandez Jr.'s son, Leo III, that he just showed up, and he happened to be living with his father at the time because the business wasn't doing well. He had to downsize. And so faced with that position of someone just turning up out of the blue, Mr. Fernandez Jr. spoke to him about the money. That's it. There was no actual evidence that he was in control of the PACA trust assets. And if Your Honors have no further questions, I give my time back to the Court. Thank you, Ms. McFarlane. I'm going to ask you for rebuttal. Thank you, Your Honors. A couple points. Mr. Peters is a man of approximate 6'4", 6'5". He weighs well in excess of 300 pounds, and notwithstanding the testimony of a man trying to avoid liability, I assure you he didn't jump the fence. But looking at Goldman Hayden, counsel talked about Goldman Hayden and the fact that the Fifth Circuit already recognizes that there's really two concepts built in there, a person that is in control or a person that is in a position to control. Well, clearly those are two separate things, and in order to find out which one applies, fact-intensive inquiry is necessary. It could be argued that if you are in a position to control, that position can be borne out of your station with the company as an officer, director, or shareholder. The inverse can be true. It can be argued that even if you're not in a position to control, you are actually in control of the company, not by virtue of your station within the company, but because the facts as they exist and as may be demonstrated through trial would show that you have the requisite level of control over the corporate trust assets and the corporate trustee itself. So that Goldman Hayden already kind of opens the door for this type of control test. Goldman Hayden also goes ahead and lays the foundation for why at least the reasoning of the Third Circuit and the Bear Mountain is correct. Goldman Hayden lays the foundation for why the USDA's reasoning when they specifically address the issue of individual responsibility in the context of a rebuttable presumption, why the foundation is there for that to be the appropriate test as opposed to your honors being asked to do a wholesale change or 180-degree change of what the test is today versus what the test should be. We believe very strongly that because the court started out its order and the very first finding that Judge Garcia made is that in order for an individual to be responsible, he must, he or she must be, and he used the mandatory term must, that that's the threshold issue. That's the clear signal, the unambiguous signal that a bright line test, the wrong test was applied, and it absolutely would have been different if the court went through and whether or not Mr. Fernandez had a corporate designation was one of the many factors the court would have considered as he heard the evidence. It's clear that different attorneys can interpret facts very differently, but the record is clear, and there's nobody in a better position than Judge Garcia, obviously, as a trier of fact to determine what he heard and what he understood from the evidence. The opinion of counsel, including mine, is of no moment in that regard. So we suggest that the error was made. It's reversible. It's clear. The incorrect test was there, and we're asking the Fifth Circuit today to reverse that decision and make it clear really to the produce industry where the Fifth Circuit stands in connection with its sister circuits and address the issue of when is an individual potentially secondarily liable vis-à-vis its relationship and control to a corporate trustee, which is the PACA licensed entity. And we suggest in so doing that the Fifth Circuit will align itself with ample jurisprudence and ample reasoning for the court to adopt a control test. And I yield back my time. I appreciate it unless there's any further questions. Thank you, Mr. Klonowski. Your case is under submission. Thank you, Your Honor. Remaining case for today, Henderson v. Hudson.